**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ARTIS C. CARROLL, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-1720** |
| | : | |
| **GEORGE W. HILL CORRECTIONAL** | : | |
| **FACILITY,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **December 8, 2022**

An incarcerated person awaiting his criminal trial can be understandably frustrated in how a correctional facility must ensure safety and order. He is not without remedies; he can seek pretrial release in his criminal case. He can file internal grievances. He also has the right to sue state actors in federal court through the civil rights laws. The Constitution guarantees him rights to be free from excessive punishment, access to the courts, and from retaliation in exercising his Constitutional rights. But federal law does not guarantee him the same accommodations and access to research and comfort as people not incarcerated.

The incarcerated Artis C. Carroll, Jr. challenges state actors' conduct during his pretrial incarceration in a facility known to Mr. Carroll from earlier incarcerations. Mr. Carroll's rambling pro se allegations seek relief from entities not subject to civil rights laws, release from custody, declaratory relief for himself and others for past conduct, money damages under the Pennsylvania Constitution, and claims based on an alleged denial of an inmate handbook. We must dismiss these claims with prejudice as amendment is futile. But Mr. Carroll may be able to plead limited claims challenging his conditions of confinement or access to courts based on delay in receipt of forms under the civil rights laws if he can specify sufficient punishment or denial of access to court, who violated his rights, and when the violation occurred including supervisory or municipal liability

for these alleged conditions. We dismiss all his allegations but grant Mr. Carroll leave to timely plead facts challenging conditions of confinement against the state actors who allegedly caused him harm.

## I.      Pro se allegations

The Commonwealth detained Artis C. Carroll, Jr. at the George W. Hill Correctional Facility in December 2015, Spring 2016, and Spring 2017.[1] The Commonwealth detained Mr. Carroll at the Facility awaiting trial from November 4 to 12, 2021 and February 1 to 5, 2022 and in the Facility's general populations since early February. He also challenges a series of interactions with correctional officers and supervisors since he left the intake unit.

### The Commonwealth detains Mr. Carroll in the Intake Unit in November 2021.

The Facility held Mr. Carroll in pre-trial detention in its Intake Unit from November 4 to 12, 2021.[2] Correctional Officers Banks and Weaver managed the Intake Unit.[3] The Facility confined Mr. Carroll in a small holding cell with ten to fifteen other detainees with no room to move around or sleep and with the lights left on all day.[4] The Facility denied him showers, access to bathrooms and drinking water, a functional phone for periods of time, toilet paper, underwear and socks, storage for prison clothes and other property, a bed, pens, pencils, writing paper, Inmate Request Forms, grievance forms, postcards, envelopes, inmate handbooks, and warm and hot water.[5] The Facility denied Mr. Carroll "block-out time" for recreation, time outside the holding cell, books, "and other basic things of prison life" in retaliation for complaining about conditions of the intake area.[6] Mr. Carroll had to sleep and eat on the hard, cold, and dirty concrete floor.[7] Unnamed "Intake Correctional Officers" caused emotional distress by denying Mr. Carroll and other detainees masks to protect against COVID-19 for two to three days.[8]

After three to four days in the "front intake holding cell," Correctional Officers placed Mr. Carroll in the "back intake holding cell," which had the "same if not wors[e] conditions."[9] Mr. Carroll could not see or hear Correctional Officers in the back intake holding cell and had to bang on the window and yell for a Correctional Officer to allow him to use the bathroom.[10] Unnamed Correctional Officers ignored him or told him to wait most of the time.[11] Unnamed Correctional Officers transferred Mr. Carroll from the Intake Unit to the Classification Unit at an unspecified time.[12] The Facility released Mr. Carroll from custody in mid-November.[13]

### *The Commonwealth detains Mr. Carroll in the Intake Unit in February 2022.*

Mr. Carroll then failed to appear for a pretrial hearing. The state court issued a warrant and the police arrested him and brought him back to the Facility. The Facility detained Mr. Carroll again from February 1 to 5, 2022 in the Intake Unit.[14] Mr. Carroll experienced the same conditions in the Intake Unit as those he experienced from November 4 through 12, 2021.[15] Correctional Officer Banks managed the Intake Unit in February 2022.[16] The Intake Unit did not give Mr. Carroll an inmate handbook.[17] The Facility removed the notices he saw in the Intake Unit in 2015, 2016, and 2017 regarding a federal lawsuit allegedly challenging the conditions of confinement in the Facility.[18]

### *Mr. Carroll's custody in the general population.*

Mr. Carroll filed a grievance in February 2022 about the lack of paper, pens, pencils, and envelopes but received no response.[19] He then asked his case manager Aiyanah Collins in early March 2022 for a "legal indigent kit" and instead she gave him an indigent hygiene kit.[20] Mr. Carroll asked again for a legal kit but Case Manager Collins responded she did not know what Mr. Carroll referred to.[21] She gave him envelopes, paper, and two pencils.[22] Case Manager Collins then gave him additional paper and pencils.[23] On March 18, after Mr. Carroll filed grievances, Mr.

Carroll alleges Case Manager Collins lied in responding to his grievances when she wrote he asked too frequently for supplies.[24] Shawnell George, also identified as "Jane Doe #2," replaced Case Manager Collins as Mr. Carroll's case manager in April 2022.[25] When Mr. Carroll asked Case Manager George for a legal indigent kit, she gave him more envelopes, paper, and pencils. She told him he had no right to a "kit" because no such right exists.[26] He alleges, unlike in other jails where the Commonwealth detained him, the Facility does not give him access to a pencil sharpener and does not provide ink pens.[27] He claims he must sharpen his pencils with his bare hands causing him to "get[] sick because I kept long fingernails to help shave the pencil."[28]

While Mr. Carroll complains about supplies after his release into general population in February 2022, he also judicially admits another Case Manager George, a/k/a Jane Doe #2, gave him paperwork and a pen sometime in February 2022 and told Mr. Carroll to sign his name. He refused because he had not received the above items.[29] He also told her "that's crazy", and she responded with an expletive.[30] He sent additional requests for supplies on February 7, 10, 16, 21, 25 and 28, 2022.[31] He made numerous oral requests.[32] He also requested grievance forms from unnamed correctional officers.[33] He filed grievances on March 2 and March 4, 2022.[34] Grievance Coordinator John Swider signed he received the grievance.[35] Coordinator Swider informed Mr. Carroll to ask his case manager if he needed paperwork.[36] Mr. Carroll alleges Coordinator Swider ignored his problem telling him to follow the same process and denying him the opportunity to file a grievance.[37] He claims he submitted upwards of twenty-five grievances but only received responses to four or five.[38] He also claims the Facility denied him his right to access the courts by denying him an inmate handbook "because, among other reasons, how else would I know if my rights as an inmate are being violated and how else would I be able to enforce my rights as an inmate without the Inmate Handbook?"[39]

Mr. Carroll alleges Grievance Coordinators Swider, Oscar Lemus, Richard Leach, and Susan Sendall ignored his grievances.[40] He accuses Coordinator Sendall of lying in a response to a grievance when she told him he had received a prison handbook.[41] When Mr. Carroll stopped unannounced at Case Manager George's office on April 11, 2022, "she forced [him] to sign in on a blank" form and "she was at liberty to put anything after I signed."[42] Mr. Carroll interpreted Case Manager George's response as refusing to respond to his inmate requests.[43] Case Manager George told Mr. Carroll "prison is not suppose[d] to be comfortable[,]" which Mr. Carroll interpreted as "[Case Manager George] believes she[']s at liberty to treat [him] any type of way".[44]

Mr. Carroll alleges Case Manager George's actions blocked his access to the courts and prevented him from filing *in forma pauperis* petitions about prison conditions at the Facility.[45] He alleges Case Manager Collins blocked his access to the courts by failing to provide an *in forma pauperis* application.[46] An "inmate request" for copies of docket sheets he sent to the Delaware County Court of Common Pleas "never made it to the Clerk of Court."[47] He claims he "can't write [to his] public defender because his mailing address is not the address of the Public Defender Office" and an unnamed "they" told him he can only address legal mail to a court or the Public Defender Office.[48] Mr. Carroll complains the nonexistence of an indigent legal kit, indigent writing kit, and writing supplies has prevented him from "things [he] need[s] to do with said supplies," such as writing down prison events, guards' and other employees' names, and communicating with his defense counsel.[49]

Mr. Carroll also alleges state actors denied him access to the law library because "they make inmates otherwise take a legal test before being considered to be called to the law library."[50] The Warden posted a sign in Mr. Carroll's housing area regarding a federal class action settlement addressing the conditions of confinement in the Facility's Intake Unit and directed inmates to the

law library for further information.[51] Mr. Carroll asked law librarian Dana Keith for information about a class action settlement on April 13 and April 20, 2022.[52] Law Librarian Keith refused to provide Mr. Carroll with details.[53]

Mr. Carroll alleges his former Case Manager Collins is responsible for responding to inmate requests while Coordinators Swider, Lemus, Leach, and Sendall are responsible for responding to inmate grievances.[54] He did not receive a response to a grievance he filed against Case Manager Collins on March 28, 2022 after she denied him a grievance form and yelled at him.[55] He submitted two other grievances the same day about not receiving an indigent legal kit and another about not receiving an inmate handbook.[56] Those grievances also went unanswered.[57] He did not wait long; he filed two lawsuits in early and mid-May 2022 repeating many of these allegations.

## II.    Analysis

Mr. Carroll is a pretrial detainee at George W. Hill Correctional Facility from where he filed two *pro se* civil rights Complaints. [58] We now screen his Complaints under 28 U.S.C. § 1915(e)(2)(B) after consolidating the cases.[59]

Mr. Carroll tries to plead claims against state actors in their individual and official capacities for:

- claims stemming from the conditions of confinement in the Intake Unit;[60]

- violating 42 U.S.C. § 1981 based on his failure to receive an inmate handbook to provide "a means of complaining";[61]

- violating sections 1981 and 1982 for the length of time it took for him to be moved out of the Intake Unit;[62]

- a conspiracy to violate his civil rights;[63]

6

- state law claims for intentional infliction of emotional distress and gross negligence;[64]

- asking we declare the intake unit conditions violated his rights and award him money damages;

- ignoring his inmate requests to certify his *in forma pauperis* paperwork;

- denying him access to courts by not providing him an inmate handbook;

- violating his right to petition the government by denying his inmate request and grievance forms;[65]

- asking we declare indigent inmates have a right to an indigent writing kit and an indigent legal kit, pens as well as pencils or, if only pencils then access to a pencil sharpener, and access to inmate request and grievance forms;[66] and,

- seeking we release him from custody and money damages.[67]

We granted Mr. Carroll leave to proceed *in forma pauperis*.[68] Congress in 28 U.S.C. § 1915(e)(2)(B)(ii) requires we dismiss his Complaint if he cannot state a claim. We must determine whether Mr. Carroll pleads "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[69] We must dismiss a claim if it "lacks an arguable basis either in law or in fact."[70] The use of the term "frivolous" in section 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation."[71] "'At this early stage of the litigation,' '[we will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"[72] Conclusory allegations do not suffice.[73] We construe Mr. Carroll's pro se allegations liberally.[74]

Mr. Carroll seeks money damages and other relief for violations of his constitutional rights. Congress allow constitutional claims filed in federal court under 42 U.S.C. § 1983. "To state a claim under [section] 1983, [Mr. Carroll] must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[75] "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[76]

### A.      We dismiss claims and parties with prejudice where amendment is futile.

Mr. Carroll seeks relief against parties or through claims which cannot proceed as a matter of law. Amendment is futile as Mr. Carroll can never proceed on these claims within our limited jurisdiction. We dismiss with prejudice: claims for declaratory relief for past conduct; claims for damages under the Pennsylvania Constitution; claims seeking release from pretrial custody through a civil rights case; civil rights claims against Delaware County Prison and the Facility as they are not persons under the civil rights laws; and claims asserting a contract or civil rights claim based on denial of an inmate handbook for some period of time.

### 1.      We dismiss Mr. Carroll's declaratory relief claim for past conduct.

Mr. Carroll asks we declare state actors violated his constitutional rights while holding him in the Intake Unit. Mr. Carroll's request for declaratory relief is improper because declaratory relief is not available to adjudicate past conduct.[77] A declaratory judgment is not "meant simply to proclaim that one party is liable to another."[78] We dismiss the demand for declaratory relief as to past conduct with prejudice.

**2.   We dismiss Mr. Carroll's claims for money damages under the Pennsylvania Constitution.**

Mr. Carroll brings claims for damages under the Pennsylvania Constitution. There is no private right of action for damages under the Pennsylvania Constitution.[79] We dismiss these claims with prejudice.

**3.   We dismiss Mr. Carroll's civil rights claim seeking release from custody.**

Mr. Carroll seeks to be released from custody. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."[80] We dismiss his claim for release from custody in his civil rights case with prejudice.

**4.   We dismiss Mr. Carroll's claims against Delaware County Prison and the Facility.**

We dismiss the civil rights claims against Delaware County Prison and the Facility with prejudice because jails and prisons are not "persons" under section 1983.[81] We dismiss this claim with prejudice.

**5.   We dismiss Mr. Carroll's claims based on the failure to receive an inmate handbook.**

Mr. Carroll asserts the Facility or its Corrections Officers did not provide him with an inmate handbook.[82] He claims he needed the handbook as "a means of complaining."[83] The lack of a handbook allegedly interfered with his ability to file prison grievances to exhaust administrative remedies before bringing claims governed by the Prison Litigation Reform Act. We interpret the allegation as an access to the courts claim.

Claims based on the prison grievance process fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process."[84] Mr. Carroll's allegations Delaware

County and the Geo Group denied him "a means of complaining" by filing grievances does not give rise to a constitutional claim. The exhaustion requirement is an affirmative defense a state actor, not the incarcerated person, must plead and prove.[85] Alleged interference with Mr. Carroll's ability to file prison grievances cannot form the basis of an access to courts claim because exhaustion is not a prerequisite to the filing of a case in court.[86]

We dismiss Mr. Carroll's access to the courts claim based on the inmate handbook with prejudice.  He may be able to amend to assert other access to the courts claims.

There is no constitutional First Amendment right to a correctional facility's inmate handbook.[87] There is no injury stemming from a denial to an inmate handbook.[88] We do not recognize an inmate handbook claim.[89] Mr. Carroll fails to allege a valid First Amendment claim for access to an inmate handbook. We dismiss Mr. Carroll's claim for an inmate handbook with prejudice.

**B.   We dismiss Mr. Carroll's claims relating to certain conditions of confinement and access to court without prejudice to pleading personal involvement, supervisory, or municipal liability.**

Mr. Carroll alleges state actors supervising the Intake Unit did not address overcrowding, they left the lights on, and forced him to sleep and eat on the floor. Delaware County and the Geo Group denied him showers, access to bathrooms and drinking water, a functional phone for periods of time, toilet paper, underwear and socks, storage for prison clothes and other property, a bed, pens, pencils, writing paper, Inmate Request Forms, grievance forms, postcards, envelopes, inmate handbooks, and warm and hot water. He alleges state actors exposed him to a risk of COVID-19. Mr. Carroll also alleges Delaware County and the Geo Group denied him recreation time in retaliation for complaining about conditions of the Intake Unit. When the Officers moved him to another cell in the intake area, he had to ask the Officers to use the bathroom and the Officers

forced Mr. Carroll to wait. He asserts Correctional Officers Banks and Weaver managed the Intake Unit. But he fails to otherwise tie his allegations to a specific named state actor. We dismiss his conditions of confinement claims but grant him leave to timely amend with specific allegations tied to specific state actors and not simply repeating his same claims without specificity.

### 1.   Mr. Carroll fails to plead punishment under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.[90] A prisoner must allege his conditions of confinement amount to punishment to plead a Fourteenth Amendment violation.[91] "Unconstitutional punishment typically includes both objective and subjective components."[92] "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."[93]

"A 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'"[94] We should consider the totality of the circumstances in evaluating such a claim.[95] "In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind "such considerations are peculiarly within the province and professional expertise of corrections officials."[96]

Mr. Carroll first complains about overcrowding in the Intake Unit. On the objective prong of the "punishment" test, housing multiple inmates in a cell does not alone violate the Constitution.[97] Mr. Carroll did not plead a plausible constitutional violation because he has not alleged the overcrowded conditions amounted to punishment, deprived him of a basic need, or

otherwise caused him harm.[98] Mr. Carroll's claim of overcrowding or with regard to any of the other conditions claim also fails the subjective prong of the "punishment" test, *i.e.*, Officers Banks or Weaver (or any other state actor) had an express intent to punish him. He fails to allege a plausible claim.

Requiring inmates to eat in a cell, even one containing a toilet, does not violate the Constitution.[99] Mr. Carroll's claims he had to eat in his cell also fails the objective and subjective prongs of the "punishment" test. The alleged denial of showers and exercise for short periods also does not amount to objective punishment.[100]

Mr. Carroll's allegation Delaware County and the Geo Group left the lights on all day is also not a plausible basis for a claim he suffered punishment. Even assuming he intended to assert the Officers illuminated the intake area all *night*, rather than all day, continuous lighting in a holding cell is not unreasonable.[101]

Mr. Carroll's allegation Delaware County and the Geo Group denied him the use of a phone also does not satisfy the objective prong of the "punishment" test.[102] Mr. Carroll's allegations the Officers denied him toilet paper, underwear and socks, storage for prison clothes and other property, pens, pencils, writing paper, postcards, envelopes, and inmate handbooks also do not meet the objective punishment prong.

We face another question as to access to drinking water. Depriving Mr. Carroll of drinking water for several days may violate the Constitution when not done for a legitimate penological reason.[103] Our Court of Appeals found depriving water and access to fluids is "sufficiently serious" and may in some circumstances demonstrate "deliberate indifference" to sustain a claim.[104] Our Court of Appeals also noted if the inmate "were to have had access to adequate hydration during the period in question, even in conjunction with meals he otherwise did not desire to eat, his claim

would necessarily fail, as he would not be able to show that the complained-of deprivation was 'sufficiently serious.'"[105] Mr. Carroll fails to allege whether he asked for drinking water and, who, if anyone, refused his request for drinking water, how long the Officers denied him drinking water at any given time, or whether he became dehydrated or suffered some other result of being denied drinking water. We dismiss his claim without prejudice to him specifying the denial of water claim.

A pretrial detainee can plead a section 1983 conditions of confinement claim by alleging the combination of conditions amounted to punishment.[106] Mr. Carroll's conclusory statements regarding the lack of cleanliness and comfort in the Intake Unit are not sufficient to state a plausible claim. And he has not identified actions by specific individuals causing the conditions to plead the claim in any event. But Mr. Carroll may be able to plead claims challenging his conditions of confinement if he can specify who violated his rights and when the violation occurred. We dismiss his Fourteenth Amendment claim without prejudice.

### 2. Mr. Carroll does not plead a retaliation claim.

Mr. Carroll also alleges state actors denied him recreation, time outside the holding cell, books, "and other basic things of prison life," in retaliation for complaining about conditions of the intake area. To state a plausible First Amendment retaliation claim, Mr. Carroll must allege: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.[107] Mr. Carroll's allegation he complained about conditions in the intake area is vague and conclusory. He again fails to assert how and when he complained, to whom he complained, how an Officer retaliated against him, and what adverse action he suffered. He does not allege his

protected conduct substantially motivated the retaliation. We dismiss his retaliation claim without prejudice.

### 3.     Mr. Carroll does not state a claim arising from COVID-19 risk.

Mr. Carroll alleges unnamed "Intake Correctional Officers" caused him emotional distress by denying him masks to protect against COVID-19 for two to three days during his time in the Intake Unit. His claim is not supported by alleged facts.

Our Court of Appeals explained "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiffs] must show the Government knew of and disregarded an excessive risk to their health and safety."[108] Our Court of Appeals further held "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference."[109] A reviewing court must defer to the expertise of both medical officials and jail administrators when evaluating this context.[110] A reviewing court must not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application in unfamiliar territory."[111] An incarcerated person will fall "well short" of establishing the deliberate indifference of a facility and its staff toward his medical needs regarding the virus if it has taken concrete steps towards mitigating the medical effects of COVID-19.[112]

A facility cannot "eliminate all risk" of contracting COVID-19 considering prisoners may have serious preexisting medical conditions.[113] Mr. Carroll does not allege Delaware County or the Geo Group caused him to contract the virus or allege he suffered any other physical injury by denying him a mask.[114] He also does not allege Delaware County and the Geo Group failed to take concrete steps to mitigate the medical effects of COVID-19. We dismiss this claim without prejudice.

4.      **Mr. Carroll does not state a claim based on denial of information about a class action settlement.**

Mr. Carroll alleges the Facility's Law Librarian, Dana Keith, refused his request for information about a class action settlement. It is unclear what constitutional right Mr. Carroll alleges Librarian Keith violated by failing to answer Mr. Carroll's inquiry. We interpret the allegation as an access to the courts claim. We assume Mr. Carroll sought the information to bring his own claim about conditions at the Facility's Intake Unit.

Mr. Carroll accessed the courts to challenge the conditions in the Intake Unit. He does not allege Delaware County and the Geo Group prevented him from filing another claim because of Librarian Keith's lack of assistance. He cannot establish he suffered an injury, namely an inability to access the courts.[115] We dismiss this claim without prejudice to specific facts.

5.      **Mr. Carroll does not presently plead denial of his access to court.**

Mr. Carroll attempts to allege an access to the courts claim alleging Delaware County and the Geo Group failed to provide indigent detainees with envelopes, paper, pens, or pencils with sharpeners. He further alleges Delaware County and the Geo Group ignored his inmate requests to certify his *in forma pauperis* paperwork and violated his right to petition the government by denying him an inmate handbook, and request and grievance forms. He concedes Case Manager Collins provided him envelopes, paper and two pencils when he asked for an indigent writing kit.[116] Case Manager Collins gave him additional paper and pencils after Mr. Carroll filed grievances.[117] He concedes Case Manager George gave him additional envelopes, paper, and pencils, but she told him he had no right to a "kit" because no such right exists.[118] Mr. Carroll asserts the Facility does not provide ink pens.[119] He had no access to a pencil sharpener and had to sharpen his pencils with his fingernail.[120] Mr. Carroll believes prisons have a duty to provide "indigent legal kits" because he received one from another institution detaining him. We are not

aware of an obligation to provide supplies to detainees. Mr. Carroll cannot point to a non-frivolous case he lost because he did not have supplies.

Mr. Carroll does not plead facts supporting this access to the courts claim. Mr. Carroll filed several cases in this Court written in pencil while detained at the Facility and has been granted *in forma pauperis* in his cases. He fails to allege an instance where he lost an arguable and nonfrivolous claim because state actors did not provide him paper, envelopes, and pencils or pens.[121]

Mr. Carroll alleges Case Manager Collins blocked his access to courts when failing to print him out an *in forma pauperis* application.[122] He fails to state a claim because we granted Mr. Carroll *in forma pauperis* status and he has not alleged other actual injury. He also fails to identify when officers did not allow him the ability to proceed *in forma pauperis*.[123]

Mr. Carroll also asserts state actors did not answer his relief for a copy of a docket sheet. The Geo Group and Delaware County only allowed him to contact his public defender by mailing correspondence to the county Public Defender's Office rather than the address of his attorney's own law firm.

Mr. Carroll complains when he stopped unannounced at Case Manager George's office on April 11, 2022, "she forced me to sign in on a blank" form and said "she was at liberty to put anything after I signed."[124] When she said she was not "going to play this writing game with me I interpreted it has [sic] her telling me she was not going to respond to any of my inmate requests."[125] She told him incarcerated persons are not supposed to be comfortable.[126] Mr. Carroll interpreted this to mean "[Case Manager George] believes she[']s at liberty to treat [him] any type of way."[127] Mr. Carroll asserts Case Manager George's actions infringed his access to the courts and prevented him from filing *in forma pauperis* petitions, and filing complaints about prison conditions at the

Facility.[128] These allegations are not sufficient to plead an access to the courts claim. The allegations fail to allege actual injury and are speculative.

He asserts an "inmate request" for copies of docket sheets he directed be sent to the Delaware County Court of Common Pleas "never made it to the Clerk of Court."[129] He also claims he "can't write [to his] public defender because his mailing address is not the address of the Public Defender Office" and an unnamed "they" told him he can only address legal mail to a court or the Public Defender Office.[130] Mr. Carroll fails to allege an unnamed "they" prevented him from communicating with his attorney by using the described procedure or he could not access the docket sheet.[131] Mr. Carroll does not identify a named state actor involved in this conduct, how this conduct interfered with his Sixth Amendment right to counsel, or how this conduct caused him to lose an arguable and non-frivolous claim. Mr. Carroll fails to state a claim.

Mr. Carroll alleges he has been denied access to the law library because "they make inmates otherwise take a legal test before being considered to be called to the law library."[132] Mr. Carroll contends Case Manager Collins is responsible for responding to inmate requests while Coordinators John Swider, Lemus, Leach and Sendall are responsible for responding to inmate grievances.[133] He fails to identify a state actor telling him he had to take a legal test, fails to provide an explanation of what he characterizes as a "test," and fails to allege how this conduct caused him to lose an arguable and non-frivolous claim.

We dismiss Mr. Carroll's access to the courts claims (other than denial of an inmate handbook as a contract theory) without prejudice.

**6.  We dismiss Mr. Carroll's claim to a right of association in the Facility.**

Mr. Carroll asserts unidentified state actors interfered with his right to associate with other in the Facility. An incarcerated person has limited constitutional rights under the First

Amendment.[134] A correctional facility's regulation is valid if it is related to the facility's interest of the treatment of incarcerated persons.[135] The Court of Appeals for the Second Circuit found the right of inmate association "is among the rights least compatible with incarceration" because incarceration requires confinement.[136] The Facility preventing association between incarcerated persons is a valid regulation because the Supreme Court in *Overton v. Bazzetta* determined First Amendment rights of association are diminished for incarcerated persons.[137] Mr. Carroll's limited rights do not include his right to associate with other prisoners to the full capacity of an individual not incarcerated.[138]

Mr. Carroll does not allege the Facility sufficiently interfered with his First Amendment right to association as an incarcerated person. We dismiss Mr. Carroll's claim without prejudice.

### 7.  Mr. Carroll fails to plead a Fourteenth Amendment Equal Protection claim.

Mr. Carroll sues Correctional Officers Banks and Weaver for violating his rights under the Equal Protection Clause of the Fourteenth Amendment.[139] Mr. Carroll is unclear regarding how Correctional Officers Banks and Weaver violated his rights.[140] We liberally construe Mr. Carroll's pro se claims as intentional discrimination based on the deliberate indifference to his rights.

The issue is whether Correctional Officers Banks and Weaver violated Mr. Carroll's rights to Equal Protection. To bring an Equal Protection claim, Mr. Carroll "must state facts showing that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."[141] Our Court of Appeals held in *Glenn v. Barua* and in *Hill v. Borough of Kutztown* plaintiffs must identify similarly situated individuals being treated differently.[142] Mr. Carroll does not plead disparate treatment compared to other pretrial detainees, but instead pleads the treatment and conditions impacted him and a "group of inmates."[143]

18

We dismiss Mr. Carroll's equal protection claim without prejudice.

### 8.  We dismiss Mr. Carroll's miscellaneous federal civil rights claims under sections 1981, 1982, and 1985.

Mr. Carroll cites several other civil rights statutes. He claims his failure to receive an inmate handbook violates 42 U.S.C. § 1981;[144] the length of time it took for him to be moved out of the Intake Unit violates sections 1981 and 1982;[145] and a conspiracy to violate his civil rights violates 42 U.S.C. § 1985.[146] These claims are not plausible. We dismiss them without prejudice.

 "'To establish a claim under [section] 1981, [Mr. Carroll] must allege (1) he is a member of a racial minority; (2) the defendant intended to discriminate against [him] on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, give evidence, etc.).'"[147] Mr. Carroll must show he belongs to a racial minority and the defendants had the "intent to discriminate on the basis of race" to satisfy the first two elements of a section 1981.[148] It is illegal to deny a citizen of the United States, under section 1982, the same right "enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property."[149]

Mr. Carroll fails to allege race or racial animus relevant to the third element—*i.e.* the activities element. He asserts the Geo Group and Delaware County's failure to provide him an inmate handbook and other actions preventing him from filing grievances breached a contract because he "complied with his end of the contract to the best of [his] ability."[150] The inmate handbook provides detainees like Mr. Carroll with no substantive rights to enforce its provisions and no right to sue for a breach of those provisions. He does not have contract rights under section 1981. We deny his claim.

Mr. Carroll does not allege racial animus, an activity falling within the enumeration contained in section 1981, or someone interfered with his property rights for purposes of section

1982. The basis of his claims is the length of time it took for him to be moved out of the Intake Unit so he could report his complaints or sue for his other claims. The Supreme Court held the exclusive federal remedy against state actors for violation of rights guaranteed in section 1981 is a claim under section 1983.[151] A section 1981 claim against a state actor where the actor may also be liable under section 1983 is not plausible.

Section 1982 concerns "property rights of citizens."[152] Congress in section 1982 provides "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."[153] To state a claim under section 1982, Mr. Carroll must plead (1) an individual's racial hostility while working in their individual capacity; (2) intentional discrimination; and (3) the same individual deprived Mr. Carroll of his rights because of race.[154] To state a claim under section 1982, Mr. Carroll must plead (1) an individual's racial hostility while working in their individual capacity; (2) intentional discrimination; and (3) the same individual deprived Mr. Carroll of his rights because of race.[155] Mr. Carroll failed to plead the racial elements of the claim. We dismiss with leave to amend if he can do so in good faith.

Mr. Carroll's civil rights conspiracy under section 1985(3) is also not plausible. To state a plausible claim under section 1985(3), the only part of the statute relevant here, he must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.[156] "'The [statutory] language requiring intent to deprive of *equal* protection . . . means that there must be some racial . . . invidiously discriminatory

animus behind the conspirators' action.'"[157] Mr. Carroll fails to plead these elements. We grant him leave to plead a race-based claim not otherwise addressed through his section 1983 claims.

**9.   Mr. Carroll fails to plead personal involvement.**

Most of Mr. Carroll's claims are not tied to a person. They are not plausible and must be dismissed without prejudice to identify each person causing him a specific harm.

He fails to tie his allegations about the conditions in the Intake Unit to a specific state actor. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[158] For example, Mr. Carroll alleges Officers Banks and Weaver "managed" the Intake Unit. His claim still fails to allege their personal involvement since there is no suggestion the conditions existed due to their personal direction, actual knowledge, or acquiescence.[159]

**10. Mr. Carroll does not plead a municipal liability claims against Delaware County and the Geo Group.**

Mr. Carroll sues individual defendants in their official and individual capacities as well as Delaware County and the Geo Group. We consider the official capacity claims against the individual defendants along with the claims against Delaware County and the Geo Group since claims against county-level officials named in their official capacity are indistinguishable from claims against the County and Geo Group.[160] "[A]n official-capacity suit is treated as a suit against the entity."[161] We construe the official capacity claims as claims brought against Delaware County and/or the Geo Group.

Mr. Carroll must allege a policy or custom caused the violation of his constitutional rights as a basis for liability against a municipal entity under section 1983.[162] "To satisfy the pleading standard, [Mr. Carroll] must . . . specify what exactly that custom or policy was."[163] "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"[164] "'Custom, on the other hand, can

be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"[165] Mr. Carroll must establish "knowledge of similar unlawful conduct in the past, fail[ing] to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury" for a custom to be the proximate cause of an injury.[166] Allegations paraphrasing the standard for municipal liability are too vague and generalized to support a plausible claim.[167]

Mr. Carroll may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."[168] "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[169]

As our Court of Appeals recently reminded us:

If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).[170]

Mr. Carroll does not identify a specific policy or custom of Delaware County or the Geo Group violating his constitutional rights.[171] He asserts Delaware County and the Geo Group along with Oversight Board Chairman Madden, "implement[ed] practices, policies, and procedures that would otherwise prevent the same situation in the [George W. Hill Correctional Facility Intake]

Unit from happening. And or in the alternative, I believe that the said defendants fail[ed] to among other similar things, supervise, train and discipline" Officers Weaver, Banks, and other unknown employees.[172]

Vague and undirected allegations about policies and failures to train or supervise do not satisfy Mr. Carroll's obligation to allege a pattern of similar violations, deliberate indifference, or the obvious need for different or more training. We must dismiss Mr. Carroll's official capacity claims and claims against those entities as not plausible. We grant Mr. Carroll leave to amend if he can plead a basis for municipal liability relating to the conditions of confinement.

### 11.    We dismiss Mr. Carroll's claims against supervisors.

Mr. Carroll asserts Kevin Madden, as Chairman of the Prison Oversight Board, as well as the Geo Group, Inc., Delaware County, Warden Laura Williams, and Deputy Warden Brick Tripp are responsible for ensuring proper training for employees and implementing policies so prisoners' rights are not violated.[173] Mr. Carroll sues unknown Facility Administrators and Managers; unknown wardens and assistant wardens and unknown intake supervisors employed by the Geo Group, Inc.; Warden Laura Williams; Brick Tripp as a Deputy Warden; and Kevin Madden, Chairman of the County's Jail Oversight Board. He asserts under the contract between the Geo Group, Inc. and the Delaware County Oversight Board, the Warden represents the Oversight Board while the Geo Group, Inc. manages the Facility and possesses oversight and rulemaking authority.[174] Mr. Carroll alleges Warden Williams took down a sign referencing the class action settlement posted during Mr. Carroll's earlier times in the intake unit, but posted another sign directing inmates to the law library for information.[175] Mr. Carroll believes Chairman Madden implemented policies "that would otherwise prevent the same situation in the [intake unit] from happening" or failed to train and supervise other defendants.[176] Mr. Carroll alleges Warden

Williams, unknown administrators, unknown deputy wardens (possibly including Brick Tripp), and an unknown intake supervisor engaged in similar conduct.[177] Mr. Carroll alleges Chairman Madden, Warden Williams, and Brick Tripp are responsible for ensuring employees are properly trained and implementing policies so prisoners' rights are not violated.[178]

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."[179] First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."[180] "Second, a supervisor may be personally liable under section 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."[181] Generalized allegations a supervisory state actor is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.[182]

"A supervisor may be liable for [his or her] failure to train or supervise employees. . . ."[183] A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor knew this unreasonable risk; (3) the supervisor remained indifferent to the risk; and (4) injury resulted from the policy or practice.[184] Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," and failure to train "actually causes injury," a supervisor may be held liable.[185] In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted

from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.[186]

Mr. Carroll fails to state a claim by alleging Warden Williams took down a sign referencing the class action settlement posted during Mr. Carroll's earlier times in the Intake Unit but posted another sign directing inmates to the law library for information. While Mr. Carroll alleges Warden Williams acted personally, he does not allege these actions caused him to lose an otherwise arguable and nonfrivolous claim. The balance of allegations involving supervisory personnel all concern failures to train or supervise other state actors. But Mr. Carroll fails to allege specific policies, knowledge, indifference, and injury. As Mr. Carroll has not alleged plausible constitutional claims, he cannot show the injury element regardless of his policy allegations.

We grant Mr. Carroll leave to amend to identify a person responsible under section 1983 for the alleged constitutional violations against Mr. Carroll in a personal capacity, as a supervisor, or under a municipal liability theory.

## C. We decline to exercise supplemental jurisdiction over the state law claims.

Mr. Carroll invoked our limited federal question jurisdiction in his complaint.[187] We dismiss all of his claims over which we have original jurisdiction. But Mr. Carroll also brings various state law claims. We could exercise supplemental jurisdiction over Mr. Carroll's state law claims under 28 U.S.C. § 1367(a). But our supplemental jurisdiction is discretionary.[188] We may consider our supplemental jurisdiction *sua sponte*.[189] We "may decline to exercise supplemental jurisdiction" over a claim if one of four factors exists:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[190]

We will not exercise supplemental jurisdiction over Mr. Carroll's state law claims for intentional infliction of emotional distress and gross negligence because we dismissed all claims over which we have original jurisdiction.[191] We dismiss Mr. Carroll's state law claims as we decline to exercise supplemental jurisdiction over them.

## III.   Conclusion

We dismiss Mr. Carroll's consolidated allegations in his Complaint. We dismiss with prejudice his claims seeking declaratory relief for past conduct, release from custody, money damages under the Pennsylvania Constitution, all claims asserted against Delaware County Prison and the Facility, and access to courts claims based on denial of the inmate handbook because efforts to amend would be futile.[192]

We cannot say at this time Mr. Carroll can never allege plausible civil rights and state law claims based on the conditions of confinement at the Intake Unit, access to court in limited instances, as well as derivative official capacity/entity liability/supervisor liability claims. We dismiss those claims without prejudice and grant Mr. Carroll leave to timely file an amended complaint with claims inside the statute of limitations (two years for civil rights cases) if he can cure the defects. Mr. Carroll is again reminded "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[193] Using terms such as "they" or "Defendants" without specifying the state actor personally involved in an incident will not cure the defects.

---

[1] ECF Doc. No. 2 at ¶ 2.

---

[2] *Id.* at ¶ 18.

[3] *Id.* at ¶ 27.

[4] *Id.* at ¶ 18.

[5] *Id.* at ¶ 19.

[6] *Id.*

[7] *Id.* at ¶ 20.

[8] *Id.*

[9] *Id.* at ¶ 21.

[10] *Id.*

[11] *Id.*

[12] *Id.* at ¶ 20.

[13] *Id.* at ¶¶ 22, 32.

[14] *Id.*

[15] *Id.*

[16] *Id.* at ¶ 27.

[17] *Id.* at ¶ 26.

[18] *Id.* Mr. Carroll alleges a variety of facts relating to his earlier incarcerations which may offer some context but do not support a claim for relief as they are plainly barred by the statute of limitations. During intake procedures years ago for example, Mr. Carroll noticed posters on the wall and windows of the intake area – known as "the bubble" – notifying detainees of a federal lawsuit. *Id.* Mr. Carroll believes the lawsuit may be a class action settlement in which he may be a class member. *Id.* at ¶ 16. Mr. Carroll and ten to fifteen other detainees shared a small cell in the intake area of the Facility in December 2015. *Id.* The Facility "locked down" Mr. Carroll for twenty-four hours a day for five days and forced Mr. Carroll to sleep and eat on the cold concrete floor. *Id.* Mr. Carroll alleged he endured the same conditions in Spring 2016 and Spring 2017 as a pretrial detainee. *Id.* The Facility also denied Mr. Carroll Inmate Request Forms, pens and pencils, grievance forms, and writing paper. *Id.* Mr. Carroll asserts "it did not register with me" the conditions he endured as a pretrial detainee at the Facility in December 2015, Spring 2016, and

Spring 2017 violated his rights. *Id.* at ¶ 17 He did not know the Facility "settled a large number of lawsuits about" the conditions. *Id.*

Mr. Carroll alleges facts dating back to 2015. Mr. Carroll may not rely on these allegations to form the basis of a plausible claim because of the two-year statute of limitations applicable to claims brought under Section 1983. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (holding Pennsylvania's two-year statute of limitations for a personal injury actions governs § 1983 claims (citing 42 Pa. Cons. Stat. § 5524(2)). While Pennsylvania's discovery rule may operate to delay the running of the statute of limitations in certain circumstances, *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) ("the discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct") (citing *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005)), "the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Fine*, 870 A.2d at 859. Because Mr. Carroll knew of any claims at the time they accrued because he personally experienced the allegedly unconstitutional conditions in real time, irrespective of his assertion "it did not register with me," Mr. Carroll's allegations concerning events predating the two-year statute of limitations are dismissed with prejudice since they are untimely.

[19] ECF Doc. No. 2 at ¶¶ 29–31.

[20] No. 22-2110, ECF Doc. No. 1 at ¶ 16.

[21] *Id.*

[22] *Id.*

[23] *Id.* at ¶ 17.

[24] *Id.*

[25] *Id.* at ¶¶ 18, 50.

[26] *Id.* at ¶¶ 19–20.

[27] *Id.* at ¶¶ 22–24.

[28] *Id.* at ¶ 25.

[29] *Id.* at ¶¶ 29–30.

[30] *Id.* at ¶ 32.

[31] *Id.* at ¶ 33.

[32] *Id.*

[33] *Id.* at ¶ 34.

[34] *Id.* at ¶¶ 35–36.

[35] *Id.*

[36] *Id.* at ¶ 36.

[37] *Id.* at ¶¶ 37, 38.

[38] *Id.* at ¶ 40.

[39] *Id.* at ¶ 43.

[40] *Id.* at ¶ 54.

[41] *Id.* at ¶ 55.

[42] *Id.* at ¶ 56.

[43] *Id.*

[44] *Id.*

[45] *Id.* at ¶ 57.

[46] *Id.*

[47] *Id.* at ¶ 58.

[48] *Id.* at ¶ 59.

[49] *Id.* at ¶ 60.

[50] *Id.*

[51] ECF Doc. No. 2 at ¶ 26.

[52] *Id.*

[53] *Id.*

[54] No. 22-2110, ECF Doc. No. 1 at ¶¶ 61, 64.

[55] *Id.* at ¶ 65.

---

[56] *Id*. at ¶¶ 66, 67.

[57] *Id*. at ¶ 68.

[58] Mr. Carroll is a frequent pro se filer in our Court. *See Carroll v. Millersville University of Pennsylvania, et al.*, No. 16-1406; *Carroll v. Wright*, No. 19-238; *Carroll v. Bauman et al.*, No. 19-721; *Carroll v. Madara*, No. 19-2059; *Carroll v. Anders*, No. 19-2060; *Carroll v. Dodszuweit*, No. 21-3369; *Carroll v. McCann*, No. 21-5143; *Carroll v. The Warden of George W. Hill Correctional Facility, et al.*, No. 21-5165; *Carroll v. Delaware County of Pennsylvania, et al.*, No. 21-5289; *Carroll v. The Life Center Eastern Delaware, et al.*, No. 21-5669; *Carroll v. Brennan*, No. 21-5685; *Carroll v. Love, et al.*, No. 21-5691; *Carroll v. Delaware County Court of Common Pleas, et al.*, No. 22-252; *Carroll v. Mallon*, No. 22-848.

[59] The allegations in these two cases are significantly similar, involve the same time periods, and there are numerous overlapping Defendants. In No. 22-1720, Mr. Carroll sued the Facility; Delaware County; the Geo Group, Inc.; unknown Facility Administrators, Managers, Staff Members, Wardens, Deputy Wardens, Intake Supervisors and Correctional Officers; Correctional Officers Weaver and Banks; Brick Tripp (Mr. Carroll asserts Mr. Tripp is the "assistant warden" and was the "acting warden" for a period of time); Warden Laura Williams; Law Librarian Dana Keith; and Kevin Madden, a Delaware County Councilman and Chairman of the County's Jail Oversight Board (*see* https://www.delcopa.gov/council/deptliaisons.html (last viewed Dec. 7, 2022); https://www.delcopa.gov/prison/job.html (last viewed Dec. 7, 2022). Each are named in their official and individual capacities.

In his second case, No. 22-2110, Mr. Carroll sues Delaware County Prison; the Facility; Delaware County; Jane Does #1 and #2; the Geo Group, Inc.; Brick Tripp; Laura Williams; Kevin Madden; Aiyanah Collins; Shawnell George; John Swider; Oscar Lemus; Richard Leach; and Susan Sendall. Each are named in their official and individual capacities.

In both cases, Mr. Carroll cites numerous federal constitutional provisions. In analyzing his claims, we will apply the provision with the most application to the facts alleged. *See generally Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotations omitted)); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (discussing the "more-specific-provision rule" which provides claims should be analyzed under the standards relevant to the more specific provision of the Constitution under which the claim falls, rather than under the Due Process Clause as a catch all). As a pretrial detainee, Mr. Carroll's claims are most appropriately considered under the Fourteenth Amendment rather than the Eighth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

[60] ECF Doc. No. 2 at ¶ 33.

[61] *Id*. at ¶ 34.

[62] *Id*. at ¶ 35.

[63] *Id*. at ¶ 36.

[64] *Id*. at ¶ 37.

[65] No. 22-2110, ECF Doc. No. 1 at ¶¶ 72–74.

[66] *Id*. at ¶¶ 76–78. Mr. Carroll appears to include *pro se* claims on behalf of other incarcerated persons. Mr. Carroll may not pursue claims on behalf of other incarcerated persons. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882–83 (3d Cir. 1991) (a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).

[67] No. 22-2110, ECF Doc. No. 1 at ¶¶ 79, 80.

[68] ECF Doc. No. 13.

[69] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

[70] *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

[71] *Id.*

[72] *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

[73] *Iqbal*, 556 U.S. at 678.

[74] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

[75] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[76] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

[77] *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80,

83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").

[78] *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[79] *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[80] *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Jaffery v. Atl. Cty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (*per curiam*) ("[T]o the extent that Duran is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through habeas corpus.").

[81] *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)).

[82] But Mr. Carroll cites extensively to pages in the inmate handbook in his Complaint in No. 22-1720, asserting he borrowed a copy from a fellow inmate. *See e.g.*, ECF Doc. No. 2 at ¶¶ 9–12, 14.

[83] *Id.* at ¶ 34; No. 2110, ECF Doc. No. 1 at ¶ 72.

[84] *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). As many courts have held, "corrections officials cannot be held liable for failing to conform to grievance and other procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7, n.7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)). All claims against Coordinators Swider, Lemus, Leach, and Sendall, who allegedly ignored Mr. Carroll's grievances or denied him grievance forms, are dismissed with prejudice.

[85] *Jones v. Bock*, 549 U.S. 199, 216 (2007).

[86] *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (holding an administrative remedy is unavailable for exhaustion purposes "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.").

[87] *Miskovitch v. Hostoffer*, No. 06-1410, 2010 WL 2404424, at *1, *6 (W.D.Pa., May 19, 2010).

[88] *Id.*

[89] *Id.*

[90] *Hubbard*, 399 F.3d at 166.

[91] *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

[92] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

[93] *Id.* (internal quotations and alterations omitted).

[94] *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)), *abrogated on other grounds*; *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).

[95] *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

[96] *Stevenson*, 495 F.3d at 68, n.3.

[97] *See Hubbard v. Taylor*, 538 F.3d 229, 232–35 (3d Cir. 2008) (triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *id*. at 236,n.6 (pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor."); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (*per curiam*) ("Double or triple-bunking of cells, alone, is not per se unconstitutional.").

[98] *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Bell*, 441 U.S. at 542–43 (1979) (double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and the average length of incarceration was 60 days); *see also Walker v. George W. Hill Corr.*, No. 18-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding prisoner's claims "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim alleging overcrowding).

[99] *See Randall v. Cty. of Berks*, No. 14-5091, 2015 WL 5027542, at *15 (E.D. Pa. Aug. 24, 2015) ("[S]erving a pretrial detainee meals in a cell that can be eaten at his desk, even if the cell has a toilet, does not violate the Due Process Clause of the Fourteenth Amendment."); *Caldwell v. Cabarrus Cty. Jail*, No. 12-586, 2012 WL 2366451, at *2 (M.D.N.C. June 21, 2012) ("[H]aving to eat in a cell with an unflushed toilet" does not violate the Constitution), *report and recommendation adopted*, 2013 WL 1344452 (M.D.N.C. Apr. 2, 2013); *Mestre v. Wagner*, No. 11-2191, 2012 WL 299652, at *4 (E.D. Pa. Feb. 1, 2012) ("[A]s other courts have held, we conclude that serving a pretrial detainee meals in a cell that has a toilet does not violate the Due Process Clause of the Fourteenth Amendment."); *Kinser v. Cty. of San Bernardino*, No. 11-0718, 2011 WL 4801899, at *4 (C.D. Cal. Aug. 25, 2011), (plaintiff's allegation "she has been confined to her cell more than 22 hours a day and that she has had to eat all her meals in her cell in close proximity to her toilet" did not state a Fourteenth Amendment claim), *report and recommendation adopted*, 2011 WL 4802850 (C.D. Cal. Oct. 11, 2011).

[100] *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Tapp v. Proto*, 718 F. Supp. 2d 598, 620 (E.D. Pa. 2010), *aff'd*, 404 F. App'x 563 (3d Cir. 2010) ("the Fourteenth Amendment does not require prisons to allow pretrial detainees daily shower access"); *Coleman v. Hodges*, No. 18-1152, 2018 WL 6618459, at *8 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("[B]eing denied a shower for four days does not constitute a serious enough deprivation of sufficient duration to establish a constitutional violation") (citing cases); *see also Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 738 (W.D.N.Y. 2015) ("To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail. Even a two-week suspension of shower privileges does not constitute a denial of 'basic hygienic needs.'") (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003)).

[101] *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (continuous lighting in holding cell not unreasonable given security concern and fact that inmate had attempted suicide); *Fillmore v. Ordonez*, 829 F. Supp. 1544, 1568 (D. Kan. 1993), *aff'd*, 17 F.3d 1436 (10th Cir. 1994) (around the clock electronic surveillance and lighting reasonably related to prison security did not amount to unconstitutional punishment); *see also King v. Frank*, 371 F. Supp. 2d 977, 984-85 (W.D. Wis. 2005) (constant exposure to fluorescent light which allows prison officials to observe inmates at night did not violate Eighth Amendment standards); *Willis v. Terhune*, 404 F. Supp. 2d 1226, 1230–31 (E.D. Cal. 2005) (exposure to twenty-four hour security lighting did not constitute cruel and unusual punishment in absence of evidence of grave sleeping problems or other harm); *Chavarria v. Stacks*, 102 F. App'x 433, 436-37 (5th Cir. July 20, 2004) (constant illumination in cell did not amount to Eighth Amendment violation, where the facility kept the lights on as a reasonable security measure).

[102] *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*) ("Prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights."); *Randall*, 2015 WL 5027542, at *17 (explaining "[a] pretrial

detainee's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution") (internal quotations omitted)).

[103] *See Young v. Quinlan*, 960 F.2d 351, 364–65 (3d Cir. 1992) (summary judgment not appropriate where factual allegations indicated prison officials placed the inmate in a dry cell for ninety-six hours, without providing drinking water, taunted the inmate about cell conditions), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71, n. 7 (3d Cir. 2000).

[104] *Collier v. Martinez*, 474 F. App'x 870, 874 (3d Cir. 2012) (*per curium*).

[105] *Id.* at n. 5.

[106] *See, e.g., Bistrian*, 696 F.3d at 373; *Conway v. Cty. of Camden*, No. 16-9550, 2017 WL 3783263, at *2–3 (D.N.J. Aug. 31, 2017) (finding prisoner sufficiently pled a plausible basis for a claim he experienced unconstitutionally punitive conditions as a detainee where he alleged, among other things: prison officials housed him in a two-person cell with three other people and required him to sleep on the floor next to the toilet with only a thin mattress; the facility had only one set of fingernail clippers for all inmates on the unit and he sustained a skin infection; mold at the facility caused him respiratory problems; a lack of hot water in the cells; he sustained insect bites; and the facility housed him with inmates infected with MRSA).

[107] *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).

[108] *Hope v. Warden York County Prison,* 972 F.3d 310, 325–31 (3d Cir. 2020) (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

[109] *Id.* at 329–30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] *Id.* at 330–31.

[114] *See Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (holding the Prison Litigation Reform Act requires a prisoner to "demonstrate physical injury before he can recover for mental or emotional injury" citing 42 U.S.C. § 1997e(e)).

[115] *See Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (holding a "'prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury'" (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996))); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)( holding that an actual injury is a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts).

[116] No. 02110, ECF Doc. No. 1 at ¶ 16.

[117] *Id*. at ¶ 17.

[118] *Id*. at ¶¶ 19–20.

[119] *Id*. at ¶¶ 22–25.

[120] *Id*.

[121] *Accord Driskell v. Jones*, No. 11-721, 2014 WL 4795048, at *12 (M.D. Ala. Sept. 25, 2014) (dismissing access to courts claim based on lack of pencil sharpener or ink pen where prisoner "[a]t no point . . . identified how any of the alleged limitations on paper [and] writing implements . . . have deprived him of his ability to access the courts"). Mr. Carroll wrote both of the Complaints in pencil, as he did with the Complaint filed in Civil Action Number 22-2690 while detained at the Facility. We dismissed this Complaint with prejudice upon screening.

[122] *Id*.

[123] Mr. Carroll moved to proceed *in forma pauperis* and filed his prison account statement in No. 22-1720 at the same time he filed his Complaint. He swore, due to his receipt of stimulus funds, he received "$800 to $1200 per month." *Id*. ECF Doc. No. 1 at 2. He also asserted officials refused to certify the balance in his prison account. *Id*. We denied the Motion without prejudice because of the amount Mr. Carroll claimed as a "monthly" receipt, noted Mr. Carroll's assertion officials would not certify his balance, and directed the Clerk of Court to forward the Order to the Warden to ensure Mr. Carroll received a timely certification of his account balance. ECF Doc. No. 5. Mr. Carroll forwarded a certified copy of the account statement on May 16, 2022. ECF Doc. No. 12. We granted him *in forma pauperis* status on May 19, 2022. ECF Doc. No. 13.

In No. 22-2110, Mr. Carroll moved with the certified balance and the Account Statement after he forwarded his Complaint, but within the time period we provided for doing so. In No. 22-2690, Mr. Carroll provided a certified balance and Account Statement the same day as the Complaint.

[124] No. 22-2110, ECF Doc. No. 1 at ¶ 56.

[125] *Id*.

[126] *Id*.

[127] *Id*.

[128] *Id*. at ¶ 57.

[129] *Id*. at ¶ 58.

[130] *Id*. at ¶ 59.

[131] Mr. Carroll has successfully made numerous requests to get copies of docket sheets and pleadings from this Court.

[132] *Id*. at ¶ 60.

[133] *Id*. at ¶¶ 61, 64.

[134] *Newman v. Beard*, 617 F.3d 775, 781 (2010) (quoting *Pell v. Procunier*, 94 S. Ct. 2800 (1974)).

[135] *Id.*

[136] *Brogdon v. City of N.Y.*, 2018 WL 4762981, at *1, *3 (S.D.N.Y. Aug. 8, 2018) (citing *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003)).

[137] *Overton v. Bazzetta*, 123 S. Ct. 2162, 2167 (2003).

[138] *Id.*

[139] ECF Doc. No. 2 ¶ 32.

[140] *Id*.

[141] *Glenn v. Barua*, 252 F. App'x 493, 500 (3d Cir. 2007) (quoting *Hill v. Borough of Kutztown*, 455 F.2d 225, 239 (3d Cir. 2006)).

[142] *Id*.

[143] ECF Doc. No. 2 at ¶ 33.

[144] *Id*. at ¶ 34.

[145] *Id*. at ¶ 35.

[146] *Id*. at ¶ 36.

[147] *White v. Wireman*, No. 16-675, 2018 WL 1278588, at *9 (M.D. Pa. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1251786 (M.D. Pa. Mar. 12, 2018) (quoting *Coggins v. Cty. of Nassau*, 988 F. Supp. 2d 231, 247 (E.D.N.Y. 2013), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015)).

[148] *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002).

[149] 42 U.S.C. § 1982.

[150] ECF Doc. No. 2 at ¶ 34.

[151] *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701 (1989).

[152] 42 U.S.C. § 1982.

[153] *Id.*

[154] *Brown*, 250 F.3d at 797 (quoting *Garg v. Albany Indus. Dev. Agency*, 899 F.Supp. 961, 968 (N.D.N.Y. 1995)).

[155] *Id.*

[156] *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

[157] *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

[158] *Rode*, 845 F.2d at 1207; *Dooley*, 957 F.3d 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

[159] *See also Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (holding generalized allegations a defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation).

[160] *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).

[161] *Id.*  A claim against the Geo Group Inc., a private corporation formerly under contract to provide services at George W. Hill Correctional Facility, must also be based on the entity's policies or customs which caused the alleged constitutional violation. *French v. GEO Grp., Inc.*, No. 18-4312, 2018 WL 4929859, at *2 (E.D. Pa. Oct. 10, 2018) ("The GEO Group acts under color of state law by providing services for the George W. Hill Correctional Facility."); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *3, n.5 (E.D. Pa. Mar. 11, 2009) ("For purposes of Plaintiff's § 1983 claims, Defendant GEO Group, a private company, was acting under the color of state law since it provided daily functional services for the Delaware County Prison.").

[162] *See Monell*, 436 U.S. at 694.

[163] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[164] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

[165] *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[166] *Id.* (internal quotations and alterations omitted).

[167] *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

[168] *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

[169] *Id.*

[170] *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

[171] In No. 22-2110, Mr. Carroll claims the Facility, the Geo Group, Inc. and Delaware County have a policy of "failing to not acknowledging indigent inmates right to an indigent legal kit and indigent writing kit; inmates rights to having something to write with" including pencil sharpeners if only pencils are provided, providing an inmate handbook and grievance forms. *Id.* at ¶¶ 69, 70. We discuss those policy claims separately as part of the analysis of the underlying claims.

[172] ECF Doc. No. 2 at ¶ 28.

[173] No. 22-2110, ECF Doc. No. 1 at ¶ 49.

[174] *Id.* at ¶ 73; ECF Doc. No. 2 at ¶ 10.

[175] ECF Doc. No. 2 at ¶ 26.

[176] *Id.* at ¶ 28.

[177] *Id.* at ¶ 33 (asserting unknown intake supervisors violated his rights).

[178] No. 22-2110, ECF Doc. No. 1 at ¶ 49.

[179] *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

[180] *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).

[181] *Id.*

[182] *See Saisi*, 822 F. App'x at 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held

liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

[183] *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008).

[184] *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

[185] *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989).

[186] *Id.* at 390–91.

[187] Mr. Carroll did not invoke our limited jurisdiction under 28 U.S.C. § 1332. He does not adequately plead diversity jurisdiction in any event as he fails to please the citizenship of all parties.

[188] *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

[189] *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).

[190] 28 U.S.C. § 1367(c); *see also Patel*, 666 F. App'x at 136.

[191] 28 U.S.C. § 1367(c)(3).

[192] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile.").

[193] *Rode*, 845 F.2d at 1207.